## Turner *et al. v.* Givens *et al.*

(Division B.   March 9, 1936.   Suggestion of Error Overruled April 20, 1936.)

[166 So. 367.   No. 31948.]

**O. F. Moss,** of Lucedale, and **J. W. Backstrom,** of Leakesville, for appellants.

218

**Ford & Ford,** of Pascagoula, for appellees.

Argued orally by **J. W. Backstrom**, for appellant, and by **E. J. Ford**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellees, Mrs. A. K. Givens and D. G. McInnis, filed their bill in the chancery court of George county against appellants, J. Tyler Turner and Horace Turner, to cancel and set aside a trustee's deed made to them as the result of the foreclosure of a mortgage theretofore executed in their favor by appellees and Mrs. Carrie Givens Chaudron, and also to cancel the mortgage, and for an accounting and recovery of alleged usurious interest. The cause was heard on amended bill, answer, and proofs, resulting in a decree canceling the trustee's deed as well

as the mortgage. From that decree appellants prosecute this appeal.

On the 12th day of March, 1925, McInnis, Mrs. Givens and her daughter, Carrie Givens Chaudron, were indebted to the Turners in the sum of eleven thousand dollars, for the payment of which they executed their eleven notes of one thousand dollars each, payable monthly. McInnis and Mrs. Givens owned certain lands in George county. To secure the payment of this indebtedness, they, with Mrs. Chaudron, executed a mortgage on the land. The mortgage, in addition to securing the eleven thousand dollars, secured all renewals or extensions and other indebtedness the mortgagors might owe the mortgagees. This entire indebtedness was paid off and discharged prior to March, 1926, but the mortgage was retained by the Turners and not canceled on the record. Mrs. Chaudron lived in Georgia; her mother, Mrs. Givens, had a power of attorney to act for her in all business matters. Their interest in this litigation appears to have been identical—each being interested as much as the other.

Gaston and Garris owned a body of timber in Dallas county, Ala. Mrs. Givens desired to purchase this timber for her daughter; she approached Tyler Turner about the matter; he was a man of apparently considerable means. On investigation, he found that he could purchase the timber for thirty-one thousand dollars cash, and so reported to Mrs. Givens. He agreed to sell it to Mrs. Chaudron for thirty-seven thousand six hundred fifty dollars on credit, in two payments of eighteen thousand eight hundred twenty-five dollars each, due in one and two years, the payments to be made as the timber was cut and marketed. In addition to the timber cutting contract, he required other security which will be referred to later. This contract was accepted by Mrs. Givens for her daughter, and was evidenced by writing duly executed by the parties. It was dated February 8, 1926. The certificate of the notary shows that it was acknowl-

edged on March 5, 1926. To further secure the purchase price of the timber, Mrs. Chaudron gave a mortgage in favor of Tyler Turner on some land she owned in Clark county, Ala., and Mrs. Givens, McInnis, and Mrs. Chaudron, on March 3, 1926, wrote Tyler Turner the following letter, which was signed by all of them:

"In March, 1925, the undersigned executed a deed of trust in favor of you and your brother, Mr. Horace Turner for $11,000.00, securing eleven notes of even date payable monthly, for $1,000.00 each, and recorded on June 9, 1925, in Book 5, of the Land Mortgage Records, pages 370-1, said deed of trust being given as collateral security for money advanced by you at that time and for future advances to be made by you.

"While the original amount advanced by you has now been settled, this deed of trust was at our request not cancelled, and as you have this day purchased, for account of Mrs. Carrie Givens Chaudron, certain timber lands in Dallas County, this is to evidence our understanding and agreement as signers of said trust deed that same shall continue in force and effect as collateral security for repayment of the amount so advanced by you for Mrs. Chaudron. It is our understanding and original intention that such advances should be covered by the instrument at its execution, and this is to remove any misunderstanding on that score, the consideration for this being the advance as aforesaid."

It will be observed that by this letter they attempted to re-establish and give life to the eleven thousand dollar mortgage which had been paid off.

On March 29, 1926, Mrs. Chaudron paid the sum of five thousand seven hundred dollars on the timber debt. This payment was made by the transfer of certain property she owned in the city of Mobile, and thereafter she was authorized to begin cutting the timber, and did so. There was default in the payments. The mortgage on the Clark county property given by Mrs. Chaudron was foreclosed and the proceeds applied on the indebtedness.

In April, 1931, Tyler Turner claimed that there was still due four thousand five hundred seventy-four dollars and twenty-nine cents, while Mrs. Givens, Mrs. Chaudron, and McInnis claimed there was nothing due; that the contract under the laws of both Mississippi and Alabama was usurious; that the sum Mrs. Chaudron agreed to pay for the timber above thirty-one thousand dollars, to-wit, six thousand six hundred fifty dollars, was in fact usurious interest and not a part of the purchase price; and that under the laws of Alabama, if they govern, all payments should be applied alone to principal and nothing to interest, while under the laws of Mississippi, if they govern, all interest paid was forfeited and could be recovered back. There was also a controversy as to whether the indebtedness should be credited with something like one thousand four hundred dollars as the result of the failure of title to forty acres of the timber, and there was a controversy about one or more other amounts claimed to have been paid. Under these conditions, the Turners substituted a trustee in the place of one originally named in the eleven thousand dollar mortgage and had him advertise its foreclosure. Before the time fixed for the sale McInnis, Mrs. Chaudron, and Mrs. Givens filed their bill in this case to enjoin it on the grounds stated, but failed to get a temporary injunction. The sale, therefore, took place, and the Turners became the purchasers of the land and received a deed thereto from the substituted trustee. The bill was then amended, asking that the sale be set aside and the trustee's deed and mortgage canceled. As above stated, the prayer of the bill was granted.

The court placed its decree alone upon the ground that under section 2152, Code of 1930, the payment of the mortgage extinguished it; that it could not be revived by the parties thereafter to secure another, and a different, indebtedness. That section provides that payment of the money secured by a mortgage shall extinguish

it and reinvest the title in the mortgagor as effectually as if reconveyed.

The Turners contend that the holding of the chancellor was erroneous; that by the letter of March 3, 1926, signed by Mrs. Givens, Mrs. Chaudron, and McInnis, the mortgage was re-established and constituted a new mortgage. There is authority to sustain this position. In 41 C. J., p. 787, sec. 895, the principle is stated thus: "Where the mortgage debt is paid, the mortgage may be kept alive for other purposes where such is the intent of the parties and the rights of third persons and creditors have not intervened. The parties have the right to treat the mortgage as unpaid and as standing as security for future advances, and it will be good for such advances as between themselves and as to all others not prejudiced thereby. So it may be kept alive to secure an indebtedness distinct from that which it was originally made to secure."

However, even though that view be sound, it is not necessary to go that far in this case; that is, to the extent of holding that the mortgage was revived by the letter so as to authorize a foreclosure in pais. We are of opinion, however, that the mortgage and the letter together constituted at least an equitable mortgage enforceable in chancery, and if, under the law, such a mortgage could be foreclosed in pais, under the facts of this particular case it ought not to have been done. The mortgagees ought to have proceeded in equity for these reasons: There was a good-faith controversy between the parties as to whether the timber contract was usurious either under the laws of Mississippi or Alabama; whether the usury laws of Mississippi or those of Alabama applied; as to certain credits claimed by appellees; as to whether the attempted revival of the mortgage was for the purpose of securing the purchase price of the timber; and whether there was any consideration moving to McInnis for the revival of the mortgage. In its

decree the court passed on the question alone as to whether the mortgage had been revived.

The mortgagors were required to do equity in their bill by tendering what was legally due on the indebtedness. A mortgage good in equity for its payment stood in their way. Conceding that there might be a foreclosure in pais of such a mortgage under the particular facts and circumstances of this case, such a foreclosure ought not to have been had. This was peculiarly a case for foreclosure in equity.

We pass on no other questions without the advice of the chancellor as to his findings of fact and law. The case, therefore, goes back for the court to pass on the other questions involved.

Reversed and remanded.