ARRINGTON v. COMMERCIAL NATIONAL BANK & TRUST CO., et al.

No. 39242 September 27, 1954 74 So. 2d 643

*Landrum & Busby, Hugh L. Bailey,* Jackson, for appellant.

*Buchanan & Montgomery,* Laurel, for appellees.

638

McGehee, C. J.

It is sought by the appellant in this suit to set aside and cancel a foreclosure sale of his 160 acres of land, which sale was made by a trustee at the instance of the appellee, Commercial National Bank & Trust Company of Laurel, Mississippi. The alleged right to have the deed of trust and the trustee's deed cancelled is that the indebtedness secured by the deed of trust had been fully paid and the lien on the land thereby discharged on January 22, 1946, long prior to the foreclosure sale on June 23, 1947. The precise question to be decided here is whether or not the indebtedness secured by the deed of trust on the land had been fully paid and satisfied on January 22, 1946, or not until February 14, 1946. If not paid in full until February 14, 1946, the deed of trust on the land was in full force and effect on January 26, 1946, when the Bank advanced to the appellant a further loan of $235 secured by a chattel mortgage on some mules, etc., and in reliance upon a provision in the deed of trust on the land which recited in substance that the lien on the land was to secure the payment of future advances.

The deed of trust on the land was executed by the appellant, Ollie Arrington, and his wife, Nora Arrington, on May 12, 1945, to secure the Bank for a loan of $248, payable in three monthly installments during the latter part of that year. On December 26, 1945, the appellant then owed a balance of $126, and paid $26 thereof. He then executed a note for the remaining $100, due thirty

days from date, secured by the said deed of trust which caused the same to become due on January 25, 1946, the day before the execution of the chattel mortgage for the additional loan of $235.

There is no conflict in the evidence as to the fact that the appellant made payments of $10 each, amounting to a total sum of $100, to the Hercules Powder Company at Hattiesburg, and that the last of such $10 payments was made on January 22, 1946. He was then engaged in supplying pine stumps to the Hercules Powder Company at Hattiesburg at an agreed price per ton, and they were being hauled for him by one M. J. Hays. It appears from the testimony that a Mr. McNeese, who had died prior to the trial of this case, was the representative of the Hercules Powder Company and that he deducted these $10 payments with the view of paying it to the appellee Bank in satisfaction of its lien for the remaining $100 then due under the deed of trust on the land; that he made these deductions at least with the consent of the appellant, whether at his instance or not. The trial judge could have reasonably concluded from the circumstances that Mr. McNeese may have deducted these sums from the money due the appellant in order to take care of the indebtedness due by the latter to the Bank upon the theory that the stumps may have come from the land on which the Bank held its deed of trust. But at any rate, the president of the appellee Bank testified that he did not know Mr. McNeese or M. J. Hays, and had never heard of either of them until after the filing of this suit, that the Bank did not authorize Mr. McNeese to collect this $100 for the Bank, and did not authorize anyone employed by the Hercules Powder Company to act as agent for the Bank in the matter. The testimony of the president of the Bank in this respect is wholly undisputed.

The burden of proof was upon the complainant, Ollie Arrington, to sustain his allegation that the $100

had been paid to the Bank or to an authorized agent prior to January 26, 1946, and this well-settled principle of law requires no citation of authorities to support it.

The only evidence as to when the $100 check, which was endorsed by the payee and left with Mr. McNeese at the office of the Hercules Powder Company in Hattiesburg, was delivered to the appellee Bank at Laurel was the stamp of the Bank thereon showing payment February 14, 1946, and the Bank's ledger showing that the same was applied to the payment of the $100 note on that same day.

It is therefore clearly established by the record that on January 26, 1946, when the Bank took its chattel mortgage there remained the sum of $100 due under the deed of trust on the land, and that this deed of trust likewise secured the sum advanced under the chattel mortgage. Moreover, the president of the Bank testified that he personally handled the making of the second loan and that he would not have advanced the additional $235 on a chattel mortgage except for the fact that the deed of trust on the land which contained the provision that the land was to secure future advances was then in full force and effect and would secure such additional loan.

The regularity of the foreclosure proceedings on the land is not challenged. There is some testimony that the appellant appeared at the time and place for the making of the sale and informed the trustee that he had a man who would be there to pay off the indebtedness to the Bank to avoid the sale, but it further appears from the testimony of the trustee that the holder of a second and unrecorded deed of trust on the land also appeared at the sale and disclosed the fact that he held such unrecorded deed of trust; that when the appellant and the person who had agreed to assist him were advised of the total amount needed to pay both deeds of trust in order that the man who had agreed to pay the indebtedness of the Bank could get a first lien from the appellant thereon,

the appellant says that he shook his head at this person (who was hard of hearing) to indicate that he was unwilling for him to pay the amount necessary to pay the sums claimed under both deeds of trust, as he was claiming some credits on the indebtedness of the holder of the second lien. In other words, the chancellor was amply warranted in holding that there was no tender made of the indebtedness due the Bank at any time prior to the foreclosure sale and that the deed of trust of the Bank against the land was in full force and effect at the time of the foreclosure sale.

 Finally, it is contended that the foreclosure should have been made in equity instead of *in pais,* because of the controversy between the parties as to whether the deed of trust on the land was still in full force and effect. The appellant cites in support of such contention the case of Turner, et al. v. Givens, et al., 176 Miss. 214, 166 So. 367. But in that case there was no dispute that the original deed of trust had been fully paid and satisfied, and the opinion of the Court therein discloses that the mortgagee was relying upon a letter written after the indebtedness under the original deed of trust had been fully paid and satisfied, which sought to reëstablish and give life to the original deed of trust. The Court was of the opinion that the original deed of trust and the letter constituted at least an equitable mortgage, enforceable in chancery, and without undertaking to analyze that decision in full, it is sufficient to say here that the same is clearly distinguishable on its facts from the case at bar.

Certain subsequent vendees of the purchaser at the foreclosure sale are made parties to this suit, and they have filed and argued a motion to dismiss this appeal, but in view of the conclusion that we have reached, we deem it unnecessary for the protection of their interest that we should sustain the said motion, even if the same

were otherwise well taken, and we have therefore over-ruled the same.

From the foregoing views expressed in this opinion, we have concluded that the decree of the trial court denying any relief to the appellant should be affirmed.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.